IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CARRIE L. ZEPPERI-LOMANTO,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 10 C 3847 |
| **AMERICAN POSTAL WORKERS UNION-AFL-CIO AND AMERICAN POSTAL WORKERS UNION-AFL-CIO-NORTHWEST ILLINOIS AREA LOCAL 7140,** | ) ) ) ) ) |
| | ) |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Carrie Zepperi-Lomanto has filed a claim against the American Postal Workers Union – AFL-CIO ("APWU") and the Northwest Illinois Area Local 7140 ("Local" or "NWIAL") under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). Lomanto alleges that the defendants (referred to collectively as "the union") breached their duty of fair representation when they filed two grievances with management, one of which resulted in Lomanto's loss of her bid job. The union has filed a motion for summary judgment, which I grant.[1]

I.

---

[1] Plaintiff also filed a motion to strike the declaration of Vance Zimmerman. This motion is denied as moot because I did not rely on the Zimmerman declaration, the related facts, or the disputed exhibits.

Lomanto was employed by the United States Postal Service ("USPS") in its Palatine, Illinois Processing and Distribution Center ("Palatine P&DC") as a custodian. The APWU is the collective bargaining representative of USPS employees in several bargaining units, including the maintenance craft. The NWIAL provides representation to employees at various USPS sites, including the Palatine P&DC.

Lomanto's position as a custodian was a bid job, a job with a set schedule of work days and shifts, in the maintenance craft. The terms and conditions of Lomanto's employment were governed by the collective bargaining agreement ("CBA") between APWU and USPS. Beginning in 2005, Lomanto worked as a temporary maintenance supervisor, or "204B supervisor," on an as-needed basis. A 204B supervisor is a non-bargaining unit position, and is paid at the supervisory rate. Article 38.7.E of the CBA sets limits on these appointments:

> The duty assignment of a full-time maintenance employee detailed to a non-bargaining unit position, including a non-bargaining unit training program, in excess of four (4) months shall be declared vacant and shall be posted and filled in accordance with the provisions of this Article. Upon return to the Maintenance Craft, the employee will become an unassigned regular. An employee detailed to a non-bargaining unit position **must return** to the craft **for a**

> **minimum of one continuous pay period to prevent circumvention of** the intent of this provision. (Emphasis in original.)

Article 38.7.E also states that the USPS should use Form 1723 to inform the union that a temporary assignment has been made to a non-bargaining unit position.

On at least two prior occasions, NWIAL investigated and filed grievances for enforcement of Article 38.7.E. In 2006, NWIAL successfully grieved a violation of Article 38.7.E involving Henry Gibson, who had worked in a temporary supervisor status for more than four months. Gibson lost his bid job as a result. He then filed an unfair labor practice charge with the National Labor Relations Board ("NLRB") regarding the grievance, but the NLRB declined to proceed to a complaint. In 2008, NWIAL filed a grievance regarding Carl Lloyd, who had worked in a non-bargaining unit for over six months. The resolution of that grievance resulted in USPS management declaring the employee's position vacant. In fact, in December of 2008, NWIAL Steward Robert LaFoe met with Lomanto to discuss a violation of Article 38.E.7. LaFoe explained that Lomanto needed to return to her bargaining unit position for a full pay period and not just any two consecutive weeks in order to avoid violating Article 38.7.E. LaFoe did not pursue a grievance against Lomanto at that time.

On January 3, 2009, Lomanto was once again assigned as a 204B temporary supervisor. Her assignment was to run to March 13, 2009. During her assignment as a 204B temporary supervisor, Lomanto had an encounter with Rick Szczesny, the Chief Union Steward for the Maintenance Craft at the Palatine P&DC. Lomanto wrote a report informing her supervisor about the incident, and USPS management decided to pursue disciplinary action against Szczesny, at least in part based on Lomanto's report. Lomanto also provided a witness statement for the incident involving Szczesny. Initially, Szczesny was fired, but he successfully grieved his discharge and it was reduced to a written warning.

There is disagreement among the parties as to what happened toward the end of Lomanto's assignment. The parties agree that Lomanto attended supervisor training in Norman, Oklahoma from February 28 to March 13, 2009. Lomanto traveled home on March 14, 2009, which was the first day of pay period 7. In a handwritten note, Lomanto informed management that she was traveling on March 14, and she requested she be paid at the supervisory rate for the dates of March 13 and 14. The USPS corrected Lomanto's pay to the supervisory rate for March 13, which was the last day of pay period 6, but not for March 14, the first day of pay period 7. Subsequently, the USPS submitted a form 1723 indicating Lomanto was again assigned temporary supervisor duties from March 28 through June 19. During pay

period 7, from March 14 through March 27, Lomanto claims that she worked exclusively in the maintenance craft.

In April 2009 LaFoe filed a grievance with management alleging that the USPS had submitted conflicting information to the NWIAL regarding Lomanto's 204B assignments and that Article 38.7.E had likely been violated. Though Lomanto did not prompt LaFoe to file the grievance, the grievance sought back pay for Lomanto for the days she allegedly worked as a temporary supervisor. That grievance was withdrawn after USPS management denied it. On the Step 1 summary, the Management Official, Robert Gotsch, reported that during the Step 1 meeting LaFoe commented that "this is what happens when you issue action on a fellow steward."

About one month later, in May 2009, LaFoe filed another grievance, this time alleging that Lomanto had not returned to her bargaining unit position as a custodian for a full pay period since January 3, 2009, in violation of Article 38.7.E. The grievance also alleged that while Lomanto had been paid at her bargaining unit pay rate during all of pay period 7, she had been seen working in the supervisors' office, and therefore not performing bargaining unit work for the full pay period. In contrast to the April grievance, the May grievance did not seek back pay for Lomanto. In fact, at Step 2, the USPS Step 2 Representative, Michael Fuechtmann, reported that the union's

5

position was that Lomanto was not entitled to any back pay. Also in contrast to the April grievance, the May grievance specifically sought to terminate Lomanto's bid job. At Steps 1 and 2, USPS management denied the grievance. However, it was advanced to Step 3 and the Maintenance Craft National Business Agent Vance Zimmerman determined that there had been a violation of Article 38.7.E, leading to Lomanto's loss of her shift bid. At the final stage, Step 3, the union included another employee's Form 1723 among the documents it submitted in support of its grievance.

    The union filed the grievances without Lomanto's knowledge and pursued them without her participation. Lomanto first learned about the grievances in December 2009, when she was informed that she had lost her bid job. Plaintiff now vigorously denies that she performed any supervisory tasks during pay period 7. However, Lomanto admits that during pay period 7 she had access to and used computer software normally utilized by supervisors for making assignments. Lomanto also admits that two USPS work assignment forms for pay period 7, specifically for March 19 and 20, were signed by someone other than Lomanto and both submitted on March 20. The defendants contend that these forms are typically signed by the employee and submitted on the day the work is performed.

Since Lomanto's bid job was declared vacant, she has been in a 204B position, earning a supervisory pay rate. While Lomanto has lost her ability to bid on shifts in her previous bargaining unit position, she has retained her seniority with regard to rate of pay and benefits.

II.

Summary judgment is appropriate where the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment initially bears the burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has met its burden, the non-moving party may not "resist the motion and withstand summary judgment by merely resting on its pleadings." *Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 628 (7th Cir. 2006). Rather, the non-movant must

show there is a genuinely disputed fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). I must construe all facts in the light most favorable to the non-moving party and draw all justifiable inferences in favor of that party. *See Anderson*, 477 U.S. at 255 (citations omitted).

Under § 301 of the LMRA, a union member may "seek relief in federal court when his union breaches its duty to represent him fairly." *Truhlar v. U.S. Postal Serv.*, 600 F.3d 888, 891 (7th Cir. 2010). To succeed on a claim against a union for breach of its duty of fair representation, a plaintiff must show that the union's conduct was "arbitrary, discriminatory, or in bad faith." *Nemsky v. ConocoPhillips Co.*, 574 F.3d 859, 865 (7th Cir. 2009) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). An analysis of whether a union or union officials acted in bad faith must "focus on the subjective motivation of union officials." *Id.* at 866. To show bad faith, a plaintiff "must point to subjective evidence showing that [the union official's] decisions stemmed from an improper motive." *Truhlar*, 600 F.3d at 893. At the summary judgment stage, this means that the plaintiff "must identify conduct by Union officials that would support a reasonable inference of bad faith." *Konen v. Int'l Bhd. of Teamsters, Local 200*, 255 F.3d 402, 408 (7th Cir. 2001).

8

Lomanto does not allege or argue that the union acted arbitrarily, but she does contend that the union acted in bad faith when it filed two grievances with USPS management regarding Lomanto's employment status during the first half of 2009. While Lomanto also argues that the USPS violated the CBA in its handling of the grievances, it is not a party to this suit. To the extent that the union focuses on the interpretation of the CBA and the evidence it used to support the grievances it filed, I take the union to be arguing that it had sufficient evidence of an alleged violation of Article 38.7.E to justify its decision to bring a grievance to management in the matter.

However, taken in the light most favorable to the plaintiff, the facts show that there is a genuine dispute as to the union's motive in pursuing the two grievances. Specifically, Lomanto has submitted evidence that (1) LaFoe made a statement revealing the union's bad faith motive[2]; (2) the union included an unrelated and possibly misleading document, the Lloyd Form 1723, in the documents it submitted in support of the May grievance; (3) Lomanto was not informed about the grievances until she lost her bid job and was therefore unable to participate in the process;

---

[2] The union argues that the statement by LaFoe, which Gotsch documented during the Step 1 process for the April grievance, is inadmissible hearsay. However, LaFoe's statement, which he made in his role as union steward, is an admission by a party-opponent, and therefore not hearsay. Fed. R. Evid. 801(d)(2)(D).

9

and (4) the union did not seek higher pay for Lomanto when she was allegedly working in a temporary supervisor status.

The union argues that these facts are immaterial because USPS management sustained the grievance at Step 3 and ultimately took away Lomanto's bid job, thereby proving that the grievance had merit. To support its argument, the union analogizes to Title VII cases, pointing out that in the employment discrimination context an employer's legitimate reasons for an employment action can defeat an employee's claim of discrimination. Lomanto counters that in Title VII cases, an employee is afforded the opportunity to show that an employer's proffered reasons for the employment action are pretextual. Indeed, in the employment discrimination context, where an employer has demonstrated that it had legitimate reasons for taking the employment action, the plaintiff must have an opportunity to show that the employer's reason "was not the true reason for the employment decision." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507-08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Texas Dept. of community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Further, because Lomanto was never invited to participate in the grievance process—to state her case or to present her own evidence—the fact that USPS management sustained the grievance is not necessarily an indication that the grievance had merit, or, by extension,

that the union had a good faith motive in pursuing the grievance. The union has therefore failed to show that there is no disputed fact as to its motive in filing the two grievances that ultimately cost Lomanto her bid job.

The union also argues that it is entitled to summary judgment because Lomanto cannot obtain the relief she seeks in this lawsuit. According to the union, Lomanto seeks certain forms of relief that rely on the participation of the USPS in this lawsuit, but Lomanto has not sued the USPS. The relief sought includes a declaration that the USPS breached the CBA, restoration of Lomanto's bid job, attorney's fees, and compensatory damages for emotional distress.[3]

Turning first to the issue of Lomanto's claim that she is entitled to a declaration that the USPS breached the CBA, the USPS made the decision to sustain the union's grievance and to declare Lomanto's bid job vacant. Lomanto chose to not sue the USPS. As a result, the USPS has not had the opportunity to defend its decision to sustain the grievance, to take a position in this lawsuit, or to present evidence to support its position.

---

[3] Defendants do not seek summary judgment on plaintiff's claim for punitive damages; however, the law is clear that punitive damages are not available for a union's violation of its duty of fair representation. *See Int'l Broth. of Elec. Workers v. Foust*, 442 U.S. 42, 51-52, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979); *see also Merk v. Jewel Food Stores Div. of Jewel Companies, Inc.*, 945 F.2d 889, 899 (7th Cir. 1991). As a result, Lomanto may not pursue her claim for punitive damages.

Lomanto has submitted the declarations of certain USPS officials involved in the grievance process, but this evidence cannot stand in for the participation of the USPS were it named as a party to the lawsuit.

Further, as Lomanto admits, her bid job can only be restored "at the discretion of [USPS] management." In other words, I cannot order the USPS, as a non-party, to restore Lomanto to her maintenance craft bid job. Though I gave plaintiff the opportunity to file supplemental briefing on this point, she did not address the issue beyond rearguing her position as stated in her response to the summary judgment motion. Accordingly, Lomanto is not entitled to a declaratory judgment against the USPS or to an order directing the USPS to restore her bid job.

The union also argues that, because Lomanto has not sued the USPS, she cannot recover attorney's fees as compensatory damages. Regarding compensatory damages generally, Lomanto admits that she has suffered no financial losses related to the grievances, other than costs and attorney fees related to this litigation. Lomanto has been employed as a temporary supervisor and has been paid at the supervisory rate since she lost her bid job. Though Lomanto lost her bid job, and the ability to bid for particular shifts as a maintenance craft employee, she has retained all other benefits, including seniority, related to her bargaining unit job. Lomanto has not provided any evidence to suggest that loss

12

of her bid job has caused her financial losses, and she is therefore not entitled to general compensatory damages.

Still, Lomanto insists that she is entitled to attorney's fees. According to the American rule, a "prevailing litigant may not ordinarily recover attorney's fees unless authorized by statute or contract." *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270, 1275 (9th Cir. 1983). Section 301 does not provide for attorney's fees. *Id.; see also Nat'l Wrecking Co. v. Int'l Broth. of Teamsters, Local 731*, 990 F.2d 957, 963 n.4 (7th Cir. 1993). In *Bennett v. Local Union No. 66, Glass, Molders, Pottery, plastics and Allied Workers Int'l Union, AFL-CIO, CLC*, 958 F.2d 1429, 1440 (7th Cir. 1992), the Seventh Circuit noted that "[t]o avoid conflict with the American rule, courts generally limit fees awarded as damages in hybrid section 301 cases to the expenses incurred in pursuing the claim against the employer, and not the claim against the union." Here, Lomanto has not pursued a claim against her employer and cannot recover attorney's fees. While Lomanto argues that the union caused the USPS to breach the terms of the CBA, leading Lomanto to file this lawsuit, Lomanto is actually seeking to recover attorney's fees for her lawsuit against the union for its alleged breach of its duty of fair representation. Lomanto cannot recover attorney's fees in this case.

13

The union also argues that Lomanto is not entitled to compensatory damages for emotional distress. I agree. The Seventh Circuit has held that claims for intentional infliction of emotional distress are preempted by § 301 where, as here, a determination of whether the conduct was "extreme and outrageous" would require a comparison of the union's conduct with the CBA. *Chapple v. Nat'l Starch and Chemical Co. and Oil*, 178 F.3d 501, 508 (7th Cir. 1999). Lomanto's attempt to couch her claim for emotional distress as compensatory damages cannot change Seventh Circuit precedent on this issue.

Finally, Lomanto seeks an order requiring the defendants to cease and desist retaliating against her and to put her next in line to receive an open bid assignment. Lomanto bases her argument, however, on the premise that the USPS illegally removed her from her bid job. Since that determination cannot be made for the reasons stated earlier, she has shown no basis for this relief. To the extent that Lomanto seeks a declaration simply stating that the union breached its duty of fair representation, I decline to allow the case to go to trial for the sole purpose of obtaining a declaration that will in no way redress Lomanto's injury. In addition to the Article III problem such a proceeding would pose, the only purpose of the declaration would be to show that the union was in the wrong. *See Rice v. Nova Biomedical Corp*, 38 F.3d 909, 911 (7th Cir. 1994) ("Beset by swollen

dockets, judges cannot be expected to look with favor upon lawsuits brought not to recoup losses but to vent indignation ....").

### III.

For the foregoing reasons, defendant's motion for summary judgment is granted.

                                      **ENTER ORDER:**

                                      */s/ Elaine E. Bucklo*

                                      **Elaine E. Bucklo**
                                  United States District Judge

Dated: January 19, 2012